**Michael HOOVER, Petitioner-Appellant,**

v.

**GARFIELD HEIGHTS MUNICIPAL COURT, et al.,**
**Respondents-Appellees.**

**No. 86–3046.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 7, 1986.

Decided Sept. 25, 1986.

Rehearing Denied Nov. 20, 1986.

---

Paul Mancino, Jr. (argued), Cleveland, Ohio, for petitioner-appellant.

David E. Mack, Law Director, City of Garfield Hts, Ohio, Garfield Hts, Ohio, James VanBergen (argued), for respondents-appellees.

Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner Michael Hoover appeals from the judgment of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Hoover challenges his convictions under Ohio law of assault and resisting arrest on several grounds. He claims that: (1) the criminal proceedings against him were improperly instituted; (2) the trial court constitutionally erred by failing to instruct on an essential element of resisting arrest; (3) the trial court constitutionally erred in instructing the jury that Hoover could not resist either a lawful *or* unlawful arrest unless the police used excessive force; (4) the requirement that he bear the burden of proving his claim of self-defense by a preponderance of the evidence unconstitutionally shifted to him the burden of disproving an element of resisting arrest; and (5) the evidence presented at trial was insufficient to support either conviction. Because we find that the trial court's failure to instruct on an essential element of resisting arrest renders Hoover's conviction of that crime unconstitutional, we reverse in part the judgment of the district court and remand with instructions to issue a writ vacating Hoover's resisting arrest conviction.

## I.

The magistrate who reviewed Hoover's habeas petition aptly set forth the following pertinent facts:[1]

On February 13, 1982, Garfield Heights police officers Fogle and Naso responded to a call regarding a domestic disturbance at an apartment building. When they arrived at the scene they noticed that a window to the building's entrance was broken. The officers were directed upstairs by the tenant of a lower apartment. When they arrived at the top of the stairs, they observed petitioner and a woman, later identified as Barbara Forbes, yelling at each other outside Forbes' apartment. A window on the apartment door was broken, and Officer Fogle observed blood dripping from petitioner's hand.

There is some dispute over what transpired next. The officers maintained that after some discussion with Forbes she indicated she would sign a domestic violence complaint and asked Fogle and Naso to place petitioner under arrest. Petitioner claims Forbes merely asked the officers to remove him from the apartment. Regardless of the content of the discussion, before petitioner could be removed from the premises he punched Officer Fogle in the face. *Petitioner was arrested for assaulting Officer Fogle and resisting arrest, but not for domestic violence.* Criminal complaints were thereafter filed against petitioner in the Garfield Heights Municipal Court.

Petitioner was found guilty at a jury trial on February 2, 1983. He was fined Five Hundred Dollars ($500.00) and sentenced to sixty (60) days in the Cleveland House of Correction on each charge, the sentences to be served consecutively. Two Hundred Dollars ($200.00) and thirty (30) days of each sentence were suspended. Petitioner's convictions were affirmed by the Eighth District Court of

Appeals on March 2, 1984, and the Ohio Supreme Court dismissed his appeal for want of a substantial constitutional question on October 26, 1984. This action was filed on December 6, 1984, and a motion for stay of execution of sentence was granted pending decision herein. (Emphasis added).

On October 2, 1985, the magistrate issued his report and recommendation. The magistrate addressed each of Hoover's grounds for habeas relief,[2] stating that Hoover had exhausted all state remedies with respect to those claims. The magistrate found that none of the claims warranted habeas relief, however. With respect to Hoover's challenges to the trial court's jury instructions on resisting arrest, the magistrate stated:

Although the instruction regarding an unlawful arrest was held by the [Ohio] Court of Appeals to be a misstatement of law, that court properly noted that because petitioner's arrest was in fact lawful the erroneous instruction was a harmless error. Similarly, the failure to instruct that the state must prove the lawfuness [sic] of the arrest is also harmless error, since the state courts concluded that petitioner's arrest was lawfully made.

\* \* \* \* \* \*

Moreover, petitioner has not demonstrated that the alleged errors in jury instructions have risen to the level of constitutional error required for federal habeas corpus relief.

Finding that Hoover's claims did not support granting habeas relief, the magistrate recommended dismissal of Hoover's petition.

On November 27, 1985, the district court filed its memorandum opinion, in which it reviewed the magistrate's report and Hoover's objections to the report. The district court found that the magistrate correctly determined that Hoover's claims did not

---

1. As the district court observed in its memorandum opinion, Hoover did not object to this recitation of the facts.

2. Hoover does not pursue two of his initial grounds for habeas relief, a speedy trial claim and a Fourth Amendment illegal entry claim, in this appeal.

warrant habeas relief. The court held that the state had instituted in a proper manner the criminal charges against Hoover, that the trial court constitutionally placed on Hoover the burden of proving self-defense, and that sufficient evidence supported Hoover's convictions. On Hoover's claim of improper jury instructions, the district court agreed with the magistrate and the Ohio appellate court that the errors were harmless. The court also approved the magistrate's conclusion that the alleged instructional errors of state law were not of a "constitutional magnitude," and were therefore not cognizable in the habeas action. The district court consequently adopted the magistrate's report and recommendation and entered an order denying Hoover's petition.

Hoover appealed in a timely fashion from that order and now asserts five grounds for habeas relief.

## II.

Hoover argues that the criminal proceedings against him were unconstitutionally commenced because the complaints were improperly issued. The complaint for assault was sworn to by Edward Fogle, one of the arresting officers, and was signed by David Borowy. Borowy, a Garfield Heights police officer, was a supervising officer of Fogle and was a duly appointed deputy clerk of the Garfield Heights Municipal Court. The complaint for resisting arrest was sworn to by the other arresting officer, Michael Naso, and was signed by Kenneth Krakora. Krakora, another officer with the Garfield Heights Police Department, was also a duly appointed deputy clerk and was a supervisor of both Fogle and Naso.

Hoover argues, as he did in his motion for acquittal in his state trial, that the complaints had to issue from a neutral and detached magistrate and that officers Krakora and Borowy were neither neutral nor detached from the criminal proceedings. In conjunction with this argument, Hoover contends that Krakora and Borowy held incompatible positions in violation of state constitutional law insofar as they were deputy clerks, as well as deputy bailiffs,[3] of the municipal court. Hoover further argues that the complaints did not allege any facts which would establish probable cause to support their issuance. The issuance of the complaints under these circumstances, Hoover asserts, violated both the Fourth Amendment requirement that warrants issue only upon a showing of probable cause and Rule 4 of the Ohio Rules of Criminal Procedure which provides for a finding of probable cause before issuance of a warrant.

We find no infirmities in the institution of the criminal proceedings against Hoover. We of course recognize that the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. Const. amend. IV, and that it applies to arrest as well as search warrants. *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). We also observe that the Warrant Clause of the Fourth Amendment requires that "*absent certain exceptions,* police obtain a warrant from a neutral and detached magistrate." *Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (emphasis added). What Hoover's arguments concerning warrant requirements ignore is that this case involves one of the well-established exceptions to the warrant requirement: a warrantless arrest for an offense committed in the presence of police officers. The Supreme Court has approved and applied "the ancient common-law rule that a peace officer [is] permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there [is] reasonable ground for making the arrest." *United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d

3.  Ohio Rev.Code § 1901.32(D) provides in part:
    Every police officer of any municipal corporation ... is ex officio a deputy bailiff of the court in and for the municipal corporation or township within which he is commissioned as a police officer....

598 (1976). Hoover was arrested for assaulting Officer Fogle and the evidence established that Hoover punched Officer Fogle in the face. Thus, the offense obviously was committed in the presence of a police officer and there was a reasonable ground for Hoover's arrest. This satisfied the Fourth Amendment warrant requirements.

▮ Hoover's arrest and the subsequent institution of criminal proceedings also complied with Ohio law. The arrest was made pursuant to Ohio Rev.Code § 2935.03 which defines an officer's power to arrest without a warrant and states in part:

> (A) A ... police officer shall arrest and detain until a warrant can be obtained a person found violating, within the limits of the political subdivision ... in which the peace officer is appointed or elected, a law of this state or an ordinance of a municipal corporation.

The subsequent complaints and affidavits were issued pursuant to Ohio Rev.Code § 2935 and Rule 4(E)(2) of the Ohio Rules of Criminal Procedure. Section 2935.05 states in part:

> When a person named in section 2935.-03 of the Revised Code has arrested a person without a warrant, he shall, without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and shall file or cause to be filed an affidavit describing the offense for which the person was arrested.

Rule 4(E)(2) provides in pertinent part:

> (2) *Arrest without warrant.* Where a person is arrested without a warrant the arresting officer shall ... bring the arrested person without unnecessary delay before a court having jurisdiction of the offense, and shall file or cause to be filed a complaint describing the offense for which the person was arrested.

Thus, under Ohio law the complaints and affidavits in the present case were not arrest warrants but were charging instruments. As such, the complaints complied with the requirements of Rule 3 of the Ohio Rules of Criminal Procedure, which states:

> The complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before *any* person authorized by law to administer oaths. (Emphasis added).

Although the complaints issued against Hoover are brief, they sufficiently set forth the statute violated and the essential elements of the violation, and were made upon oath before duly appointed deputy clerks who were authorized by law to administer oaths.[4]

Based on the foregoing analysis, we conclude that the manner in which the criminal charges against Hoover were instituted did not violate his constitutional rights or Ohio law. Accordingly, we reject this claim for habeas relief.

### III.

Hoover raises several challenges to the trial court's jury instructions on the offense of resisting arrest. He first argues that the trial court erred by refusing to instruct that the prosecution had to prove tht his arrest was lawful before he could be convicted of resisting arrest. Hoover claims that "lawful arrest" is an essential element of resisting arrest and the failure to instruct that the state had the burden of proving that element beyond a reasonable doubt violated the due process principles recognized in *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970).[5]

---

4. Ohio Rev.Code § 1901.31(E) provides that "[t]he clerk of a municipal court may administer oaths...." Section 1901.31(H) provides for the appointment of deputy clerks and states that they "may perform the duties appertaining to the office of the clerk."

5. Very closely related to this argument is Hoover's claim that the trial court erroneously instructed the jury when it stated that Hoover could be found guilty of resisting arrest regardless of whether his arrest was lawful or unlaw-

## A.

The Due Process Clause of the Fourteenth Amendment requires the state to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In determining which facts must be proven to establish a given offense, we generally look to the state legislature's statutory definition of the offense. The Supreme Court recognized in *Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), that "[t]he applicability of the reasonable-doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case." *Id.* at 211 n. 12, 97 S.Ct. at 2327 n. 12. The Court recently reaffirmed this principle in *McMillan v. Pennsylvania*, — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), stating that "in determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive."[6] *Id.*, 106 S.Ct. at 2416.

Ohio court decisions also direct us to the governing criminal statute to ascertain the elements of an offense. Under Ohio law, all crimes are statutory and "[t]he elements necessary to constitute a crime must be gathered wholly from the statute." *State v. Cimpritz*, 158 Ohio St. 490, 490, 110 N.E.2d 416 (1953); *see also State v. Draggo*, 65 Ohio St.2d 88, 91, 418 N.E.2d 1343 (1981) (per curiam).

■ With these principles in mind, we look to the Ohio statute which defines resisting arrest, Ohio Rev.Code § 2921.33(A). That section provides:

No person, recklessly or by force, shall resist or interfere with a *lawful arrest* of himself or another. (Emphasis added).

This statute clearly makes a "lawful arrest" an element which the state must prove to establish the crime of resisting arrest. Various Ohio appellate courts, including the court which heard Hoover's direct appeal, have recognized this. *See, e.g., State v. Johnson*, 6 Ohio App.3d 56, 57–59, 453 N.E.2d 1101 (1982) ("the statute does not charge an offense unless the arrest is 'lawful' "); *State v. Hill*, No. 85–12 (5th Dist. Ohio Ct.App. Jan. 30, 1986) [Available on WESTLAW, OH–CS database] (defendant could not be convicted of resisting arrest because arrest was unlawful); *City of Chillicothe v. Jobe*, No. 1115 (4th Dist. Ohio Ct.App. July 1, 1985) (Ohio Rev.Code § 2921.33 requires proof that the arrest was lawful as a "prerequisite" for conviction); *State v. Smith*, No. 10–014 (11th Dist. Ohio Ct.App. Sept. 21, 1984) (the terms of Ohio Rev.Code § 2921.33 requires resistance to a *lawful* arrest). *See also State v. Kirchner*, 19 Ohio Misc.2d 7, 8, 483 N.E.2d 497 (1984) ("a defendant cannot be convicted of resisting arrest unless there was a 'reasonable basis' for the arrest"); *State v. Paglia*, 62 Ohio Misc. 7, 10, 403 N.E.2d 1216 (1979) (the specific reference in Ohio Rev.Code § 2921.33 to a "lawful arrest" requires that the arresting officer have probable cause for the arrest); *Coffel v. Taylor*, 8 Ohio Op.3d 253 (1978) (recognizing that a conviction under § 2921.33 requires that the arrest be lawful).

The trial court in the present case, however, relied on an Ohio Supreme Court decision, *City of Columbus v. Harris*, 44 Ohio St.2d 89, 338 N.E.2d 530 (1975) (per curiam), in refusing to instruct that the prosecution had to prove the lawfulness of Hoover's arrest as an element of resisting arrest. *Harris*, a very brief per curiam opinion, relies solely on another Ohio Supreme Court decision, *City of Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735

---

ful. This claim is addressed in Part IV of this opinion.

**6.** There are, of course, certain constitutional limits beyond which a state legislature may not go in defining the elements of a crime. *Patter-*

*son*, 432 U.S. at 210, 97 S.Ct. at 2327. "[I]n certain limited circumstances *Winship's* reasonable doubt requirement applies to facts not formally identified as elements of the offense charged." *McMillan*, 106 S.Ct. at 2417.

(1975). That case held in paragraph 3 of the syllabus: [7]

In the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances.

*Id.* at 173, 324 N.E.2d 735.

This statement would seem to support the trial court's refusal to instruct on the element of lawful arrest. The *Fraley* decision, however, is inapposite. There, the defendant was convicted for violating a Columbus, Ohio city ordinance. That ordinance provided:

No person shall strike or assault a police officer or draw or lift any weapon or offer any violence against a police officer, when said police officer is in the execution of his office.

Columbus Code of Ordinances § 2355.01; *see Fraley*, 41 Ohio St.2d at 178, 324 N.E.2d 735. Obviously, this provision differs from Ohio Rev.Code § 2921.33 in that it does not mention resisting or interfering with a "lawful arrest." *See State v. Johnson*, 6 Ohio App.3d 56, 57–58, 453 N.E.2d 1101 (1982) (distinguishing *Fraley* and observing dissimilarity between the Columbus ordinance and § 2921.33). Rather, the Columbus ordinance prohibits a broader scope of activity than resisting arrest, including any offer of violence against a police officer while "in the execution of his office." This would include, but is certainly not limited to, a violent act of resisting a lawful arrest. Because there is no specific lawful arrest requirement contained in the ordinance, the Ohio Supreme Court was free to interpret the ordinance as prohibiting a violent act against a police officer attempting to make any arrest, whether lawful or unlawful. The Court did not have before it, however, the issue of wheth-

er § 2921.33 only proscribes resistance to a lawful arrest. Consequently, references in *Fraley* to the more narrow offense of resisting arrest are dicta.

That question is now squarely before this court and we conclude that § 2921.33 indeed forbids only resisting a lawful arrest and does not prohibit resisting an unlawful arrest. As shown by the plain language of the statute, the Ohio legislature decided to make lawful arrest an element of resisting arrest. The courts are not in a position to alter or amend that decision. Consequently, insofar as the Ohio Supreme Court in *Fraley* purported to abandon the common law rule allowing a person to resist an unlawful arrest, *see State v. Pembaur*, 9 Ohio St.3d 136, 138, 459 N.E.2d 217 (1984) (interpreting *Fraley*), it is inconsistent with the plain statutory language of § 2921.33.

**B.**

■ Having determined that "lawful arrest" is an element of the Ohio crime of resisting arrest, we also find that the trial court erred as a matter of state law in refusing to instruct on that element. This refusal also amounted to a constitutional error. The trial court's failure to instruct that the state had to prove the element of lawful arrest violated the due process principle that no one may be convicted of a crime absent proof of every fact necessary to constitute the crime beyond a reasonable doubt. *Winship*, 397 U.S. at 364, 90 S.Ct. at 1072–73.

Although the Ohio appellate court in Hoover's direct appeal likewise found that the trial court had erred, it held that the error was harmless. The court based its analysis on its finding that Hoover's arrest was lawful and its conclusion that the lawful arrest element of resisting arrest was therefore satisfied. Both the magistrate and the district court adopted this same harmless error analysis.[8] Hoover asserts

---

7. The syllabus, rather than the text, of an Ohio Supreme Court decision states the law of the case. *Cassidy v. Glossip*, 12 Ohio St.2d 17, 18, 231 N.E.2d 64 (1967).

8. In the alternative, the district court and the magistrate concluded that the instructional error did not rise to a constitutional level cognizable on habeas review. While the mere fact that

that this analysis is improper, arguing that a trial court's failure to instruct on an essential element of an offense can never be considered harmless error.

### C.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Supreme Court rejected the notion that all constitutional errors necessarily require reversal of criminal convictions, *id.* at 22, 87 S.Ct. at 827, and set forth the principle that a constitutional error may be held to be harmless if the reviewing court concludes that it was harmless beyond a reasonable doubt. *Id.* at 24, 87 S.Ct. at 828. *Chapman* also recognized, however, "that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error...." *Id.* at 23, 87 S.Ct. at 827–28. (footnote omitted). Examples of constitutional errors that can never be considered harmless include the use of a coerced confession, *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958), the complete denial of counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the denial of an impartial judge, *Tumey v. Ohio*, 273 U.S. 510, 83 S.Ct. 792, 71 L.Ed. 749 (1927). *See Chapman*, 386 U.S. at 23 n. 8, 87 S.Ct. at 828 n. 8. Thus, although harmless error analysis may generally be applied to constitutional errors, there are some errors so fundamental that they cannot be said to be harmless and are not subject to harmless error analysis.

There appears to be some disagreement between the federal courts of appeal as to whether a trial court's failure to instruct on an essential element of an offense may be considered harmless error.[9] The leading Sixth Circuit case is *Glenn v. Dallman*, 686 F.2d 418 (1982). In *Glenn* the habeas

petitioner had been found guilty of aggravated burglary under Ohio law without an instruction on one of the essential elements of the offense. The district court, on remand from this court, found that the trial court had indeed erred in failing to instruct on an element of aggravated burglary but concluded that such error was harmless because the jury would have found that element proved beyond a reasonable doubt had it been instructed correctly. On appeal, this court reversed, rejecting the district court's application of the harmless error analysis and holding that "the complete and utter failure to inform the jury of an essential element of the crime of which the petitioner was convicted ... was a violation of due process." 686 F.2d at 420. The failure to instruct on an essential element is error, the court stated, "because it deprives the defendant of the right 'to have the jury told what crimes he is actually being tried for and what the essential elements of these crimes are.'" *Id.* at 421, *quoting United States v. Natale*, 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). The court related the error to a violation of the right to trial by a jury, as well as characterizing it as a due process error, observing that the right to a jury trial places on the government the burden of proving every element of an offense "to the jury's satisfaction, not to the reviewing body's satisfaction." *Id.* The court purportedly stopped short, however, of establishing a per se rule that failure to instruct on an essential element always violates due process. *Id.* at n. 2. The omission of instructions relating solely to "technical" or "procedural" elements of a crime could be harmless, according to the court, but the omission of instructions on nonprocedural

a trial court's jury instructions violated state law "does not, standing alone, justify federal habeas relief," *Melchior v. Jago*, 723 F.2d 486, 491 (6th Cir.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2156, 80 L.Ed.2d 542 (1984), if the instructions also violated the petitioner's federal constitutional rights, the error is cognizable on habeas review. *Id.* As we stated above, we find that

the failure to instruct on the element of lawful arrest violated Hoover's due process rights.

9. The cases addressing this issue do not distinguish the analysis governing a finding of harmless error from that governing a finding of plain error under Fed.R.Crim.P. 52(b). The courts use the analyses and the precedents involving the two situations interchangeably.

or nontechnical elements "is plain error." [10] Thus, *Glenn* stands for the proposition that the failure to instruct on a nonprocedural or nontechnical element of an offense can never be considered harmless error. *See id.* at 424 (Kennedy, J., dissenting).

Several other circuits have also held that the failure to instruct on an essential element cannot be harmless error. For example, the Second Circuit in *United States v. Howard,* 506 F.2d 1131 (2d Cir.1974), held that the failure to instruct on all elements of an offense was not harmless error even though the elements not instructed on were not contested at trial. The court stated that "even if [it] believe[d] that there was overwhelming proof of the elements not charged," it had to reverse because the defendant had the right to have a jury, not a reviewing court, determine whether the prosecution proved the elements. *Id.* at 1134. These statements intimate adoption of a per se rule that omitting instructions on an essential element cannot be harmless error. However, a subsequent Second Circuit case renders this conclusion suspect. *See United States v. Singleton,* 532 F.2d 199, 205–06 (2d Cir.1976) (failure to instruct on every element is not per se plain error requiring reversal). The D.C. Circuit apparently has adopted a per se rule of reversal for a failure to instruct on an essential element. In *United States v. Gaither,* 440 F.2d 262, 264 (D.C.Cir.1971), the court held that "*any* omission of an element of a crime in the instructions is plain error." (Emphasis added).

Other circuit decisions, however, have found that omitting an instruction on an essential element may constitute harmless error under certain circumstances. The Eighth Circuit in *Redding v. Benson,* 739 F.2d 1360 (8th Cir.1984) *cert. denied,* 469 U.S. 1222, 105 S.Ct. 1210, 84 L.Ed.2d 352 (1985), was presented with a claim that a state trial court's failure to instruct on a material element of attempted theft was "a due process violation so basic and fundamental that it [could] never be considered harmless." *Id.* at 1364. The court rejected this claim, distinguishing the instructional error from the type of constitutional errors which *Chapman* recognized were "never harmless." Consequently, the court applied the harmless error analysis and determined, based on the facts of the case, that "the instructional error was harmless beyond a reasonable doubt." *Id.* at 1363. A recent Eighth Circuit case reaches a contrary conclusion, however. *See United States v. Voss,* 787 F.2d 393, 398 (8th Cir. 1986) (stating that a jury verdict is error if based on an instruction which does not require the jury to find each element of the offense before convicting, and holding that such error "cannot be treated as harmless"). The Fifth Circuit has also declined to adopt a per se rule that failing to instruct on an essential element can never be harmless error. *See United States v. Brown,* 616 F.2d 844, 846 (5th Cir.1980) ("Dicta to the contrary notwithstanding ... we divine no rule that failure to specifically to instruct on any single essential element of a crime per se constitutes plain error." (Citations omitted)). The Ninth Circuit likewise is amenable to finding that a trial court's failure to instruct on an element of the crime charged can be harmless. *See United States v. Valdez,* 594 F.2d 725, 729 (9th Cir.1979) (holding that failure to instruct on an essential element was harmless error because the element was so clearly established). *Cf. United States v. King,* 587 F.2d 956, 966 (9th Cir.1978) ("The failure to instruct on every element of an offense is harmless *only* if the omitted element is undisputed, and, therefore, its omission could not possibly have been prejudicial." (Emphasis added)).

As these cases illustrate, there is not a clearly preferred answer to the question of

**10.** The court derived this procedural/technical elements exception from two prior Sixth Circuit cases, *United States v. Bryant,* 461 F.2d 912 (1972), and *United States v. Rybicki,* 403 F.2d 599 (1968). Both cases involved the issue of whether the failure to instruct on an essential element constituted plain error under Fed.R. Crim.P. 52(b). In both cases, the failure was found to be reversible, plain error, but the cases indicated that the failure did not "per se require reversal." *Bryant,* 461 F.2d at 921.

whether the failure to instruct on an essential element of the crime charged may be considered harmless error. Still, the inclination in this Circuit, as shown by *Glenn*, is to not apply harmless error analysis to this type of instructional error. Thus, we are not writing on a clean slate and are constrained by Circuit precedent.

However, in the recent case of *Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court discussed the general principles governing when harmless error analysis may be applied. We must determine whether *Rose* has modified this Circuit's position taken in *Glenn*.

In *Rose*, the Court resolved the question which it failed to resolve in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983): "whether the harmless error standard of *Chapman v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967), applies to jury instructions that violate the principles of *Sandstrom v. Montana*, 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979), and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)." *Rose*, 106 S.Ct. at 3103 (footnote omitted). After reviewing the principles governing application of the harmless error rule, the Court concluded that a *Sandstrom* error was not "so basic to a fair trial" that it could never be considered harmless and held that the error at issue—an improper burden-shifting instruction on the element of malice—was in fact harmless.

At first glance, *Rose* would seem to support application of harmless error analysis in the present case. First, a *Sandstrom* error and the error at issue here are similar in that they both involve instructional errors on an element of the charged offense. *See Glenn*, 686 F.2d at 425 (Kennedy, J., dissenting) ("I see no distinction from the defendant's viewpoint between an instruction presuming an element of the crime, the constitutional error in *Sandstrom*, and the failure to give an instruction on an element."). Second, the Court in *Rose* emphasized "that while there are some errors

to which *Chapman* does not apply, they are the exception and not the rule." *Rose*, 106 S.Ct. at 3106.

However, a closer reading of *Rose* supports the conclusion that application of harmless error analysis is not proper in the present case. The Court observed that harmless error analysis would not apply if a trial court directed a verdict for the state in a criminal case. 106 S.Ct. at 3106. The Court concluded, however, that a *Sandstrom* error was not the equivalent of a directed verdict. *Id.* at 3107. In doing so, it importantly distinguished the cases involving *Sandstrom* errors, where the jury is instructed to presume an element from predicate facts, from the cases involving instructional errors which *completely prevent* the jury from considering an element. *See id.* at 3107 n. 8 (" 'Because a presumption does not remove the issue of intent from the jury's consideration, it is distinguishable from other instructional errors that prevent a jury from considering an issue.' ") (quoting *Connecticut v. Johnson*, 460 U.S. 73, 95 n. 3, 103 S.Ct. 969, 972 n. 3, 74 L.Ed.2d 823 (1983) (Powell, J., dissenting)). The implication of this statement is that when an instruction prevents the jury from considering a material issue, it is equivalent to a directed verdict on that issue and therefore cannot be considered harmless.

■ In the instant case, the trial court's failure to instruct the jury that it had to find that Hoover's arrest was lawful in order to convict him of resisting arrest prevented the jury from considering that element and constituted a directed verdict on it. In light of the Supreme Court's analysis in *Rose*, this instructional error cannot be considered harmless.

This conclusion is further buttressed by the Supreme Court's analysis in *Rose* in finding that the erroneous instruction did not violate *Winship*. The Court noted that when a jury is told to presume an intent element from predicate facts it still must find those facts beyond a reasonable doubt. 106 S.Ct. at 3107–08. Thus, even when an impermissible *Sandstrom* instruction is

given, the *Winship* principle that the jury must find beyond a reasonable doubt "every fact necessary" to establish every element of the offense is not violated. *Id.* at 3108.

In the present case, however, the *Winship* principle is violated. Because the jury was not instructed on the element of lawful arrest, it did *not* find beyond a reasonable doubt "every fact necessary" to establish every element of resisting arrest. This violation of due process cannot be considered harmless error.

In sum, we conclude that the failure to instruct the jury on an essential element of the crime charged is one of the exceptional constitutional errors to which the *Chapman* harmless error analysis does not apply. This conclusion follows from our Circuit precedent on this issue, *Glenn v. Dallman.* Accordingly, Hoover's conviction on resisting arrest must be vacated and the judgment of the district court, insofar as it dismissed that portion of Hoover's petition seeking habeas relief on his resisting arrest conviction, is reversed.

### IV.

Hoover's next claim of error involving jury instructions is directly related to the immediately preceding claim. In refusing to instruct that lawful arrest was an element of resisting arrest, the trial court instructed the jury that Hoover could not resist any arrest, whether lawful or unlawful, unless the police used excessive force. Hoover claims that this instruction is constitutionally infirm. As we previously concluded, Ohio Rev.Code § 2921.33 only proscribes resisting or interfering with a lawful arrest. This holding necessarily leads to the conclusion that the trial court's instruction on resisting arrest is erroneous under state law. However, since we have already awarded Hoover the relief he seeks for this error—reversal of his resisting arrest conviction—in Part III of this opinion, the question of whether this error warrants habeas relief is moot.

### V.

Hoover also challenges the trial court's instructions on his defense of self-defense. The trial court instructed, pursuant to Ohio law,[11] that Hoover had the burden of proving that he acted in self-defense by a preponderance of the evidence. Hoover claims that this allocation of the burden of proof violated the Due Process Clause because it shifted to him the burden of disproving an element of resisting arrest—that the arrest was lawful—in violation of *Winship* and its progeny, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).[12] Hoover contends that in order to prove his defense of self-defense, he necessarily had to prove that his arrest was unlawful, thereby negating the element of lawful arrest.

Although this court has recently upheld the constitutionality of Ohio's allocation of the burden of proving self-defense, *see White v. Arn,* 788 F.2d 338 (6th Cir.1986),[13]

11. Ohio Rev.Code § 2901.05(A) places on an accused "[t]he burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense." The Ohio courts have "long determined that self-defense is an affirmative defense." *State v. Martin,* 21 Ohio St.3d 91, 93, 488 N.E.2d 166 (1986).

12. *Mullaney* held unconstitutional a Maine rule requiring a defendant charged with murder to prove that he acted in the heat of passion, rather than with malice aforethought, in order to reduce the murder charge to manslaughter. The Supreme Court held that the rule unconstitutionally shifted to defendants the burden of proving an essential element of the crime of murder in violation of *Winship.* 421 U.S. at 691–704, 95 S.Ct. at 1886–92. *Patterson* upheld the constitutionality of a New York law requiring an accused to prove the affirmative defense of extreme emotional disturbance by a preponderance of the evidence. The Supreme Court held that the statute did not violate the Due Process Clause because it did not impermissibly shift to defendants the burden of disproving any fact essential to the offense charged. 432 U.S. at 201–16, 97 S.Ct. at 2322–30.

13. We note, however, that the Supreme Court recently granted certiorari in a case in which the defendant challenges Ohio's allocation of the burden of proving self-defense. *Martin v. Ohio,*

we need not address the issue in this case since Hoover's argument focuses solely on whether he had to disprove the lawful arrest element of resisting arrest and we have already determined that his conviction on resisting arrest was unconstitutionally obtained. Accordingly, we decline to consider whether placing the burden of proving self-defense on Hoover violated the Due Process Clause.

## VI.

Hoover lastly claims that there is insufficient evidence to support his convictions of assault and resisting arrest. The relevant question in reviewing a challenge to the sufficiency of evidence supporting a state conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Viewing the evidence in this manner, we conclude that a rational juror could have found all the elements of assault beyond a reasonable doubt. Ohio Rev.Code § 2903.13 states in part that "[n]o person shall knowingly cause or attempt to cause physical harm to another." The evidence in this case established that Hoover, while in the presence of two police officers, struck one of the officers in the face with his fist. This is clearly sufficient evidence to sustain a conviction under § 2903.13.

As to Hoover's conviction of resisting arrest, we need not determine whether there is sufficient evidence to sustain that conviction since we have already concluded that it must be vacated on other grounds.

For the reasons set forth above, we REVERSE in part the judgment of the district court and REMAND with instructions to grant a writ vacating Hoover's conviction of resisting arrest. The district court's judgment, insofar as it denied habeas relief

on Hoover's conviction of assault, is AFFIRMED.

DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part.

Insofar as the judgment of the court affirms the district court's denial of habeas relief as to the assault convictions, I concur; insofar as it sustains the collateral attack on petitioner Hoover's conviction for resisting arrest, I respectfully dissent.

Three Ohio appellate court judges, a United States magistrate, a United States district judge and three United States circuit judges, having examined the record of the criminal case in the Garfield Heights Municipal Court, have concluded that Mr. Hoover's arrest was in compliance with Ohio law. I see no reason to suppose that a Garfield Heights jury would have concluded otherwise had it been told, as it should have been, that a lawful arrest is one of the elements of the offense of resisting arrest.

The activities in which Mr. Hoover was engaged between four and five o'clock on the morning in question included (a) breaking a number of windows in the building where he and his girlfriend shared an apartment, (b) knocking over the furniture in the apartment, (c) "pushing" the girlfriend in the course of a protracted and raucous nocturnal argument, and (d) fighting with the uniformed policemen who responded to telephone complaints about the disturbance. These facts were undisputed. It was also undisputed that Mr. Hoover, caught literally redhanded (thanks to a shard from one of the windows he had broken) on a staircase outside the apartment, was arrested without a warrant and without having been told the cause of his arrest.

It was the contention of Mr. Hoover's counsel that the fact the policemen had no warrant and the fact they failed to inform Mr. Hoover of the cause of his arrest made the arrest unlawful. The facts were undisputed, but the legal contention was simply

---

*cert. granted,* —— U.S. ——, 106 S.Ct. 1634, 90 L.Ed.2d 180 (1986). The Ohio Supreme Court had upheld the constitutionality of the Ohio law.

*See State v. Martin,* 21 Ohio St.3d 91, 488 N.E.2d 166 (1986).

wrong; the Ohio Court of Appeals so held, and the Ohio Supreme Court declined to overturn that holding. If the jury had been properly instructed, therefore, it would have been told not only that a lawful arrest is one of the elements of the crime of resisting arrest, but that when a person engages in conduct such as that in which Mr. Hoover was indisputably engaged it is lawful for the police to arrest him without a warrant and without explicitly stating the cause of the arrest.

Under these circumstances, it seems to me that the lawfulness of the arrest is a "technical" question within the meaning of that term as used in *Glenn v. Dallman,* 686 F.2d 418, 421 n. 2 (6th Cir.1982). *Glenn v. Dallman* teaches that it is plain error, of constitutional magnitude, for a state trial court not to instruct the jury on any but "technical" or "procedural" elements of the crime for which a defendant is being tried; but this court has never adopted a per se rule under which state court convictions would become vulnerable to collateral attack for failure to instruct on "technical" elements as well.

*Glenn v. Dallman* involved a state trial for aggravated burglary. One of the elements of that crime was that the burglarized house had to be "occupied" in the sense that someone was "present or likely to be present" at the time of the crime. It was admitted that no one was "present," and this court held that the jury should have been permitted to determine, under proper instructions, whether anyone was "likely to be present."

Whether anyone is "likely to be present" in a particular place at a particular time is not a technical question of law, but a pure question of fact. There are many situations, of course, in which the lawfulness of an arrest will depend on the resolution of disputed questions of fact, but this is not such a case; in the context of this particular case, therefore, the "lawfulness" element strikes me as a technical question on which the potential contribution of the jury would be minimal.

Taken as a whole, the jury instructions delivered by the Garfield Heights Munici-

pal Court were eminently fair to Mr. Hoover. If the jury had been disposed to acquit him, it had ample room for doing so, under the instructions it received, whatever the technicalities of the case might have been. Mr. Hoover was not given a perfect trial, but he was given a trial that was fundamentally fair, that was conducted before an impartial judge and jury, and in which his able counsel had every opportunity to elicit all favorable facts. On appeal of the conviction, a panel of distinguished Ohio jurists carefully examined every claim of error and decided that the instructional error which admittedly occurred was harmless. The instructional error addressed in *Rose v. Clark,* 478 U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)—allowing the element of malice to be presumed in a trial for murder—strikes me as fraught with more peril for the defendant than the technical mistake committed by the Garfield Heights Municipal Court. The United States Supreme Court having held that the application of harmless error analysis was mandatory in *Rose v. Clark,* I would have affirmed the denial of habeas relief as to both of Mr. Hoover's convictions.