**John Joseph HENNESSY,
Petitioner–Appellee,**

v.

**Bob GOLDSMITH; Robert Corbin, Attorney General of the State of Arizona, Respondents–Appellants.**

No. 89–16251.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1990.

Decided April 1, 1991.

Greg A. McCarthy, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellants.

Michael J. Bloom, Tucson, Ariz., for petitioner-appellee.

Before NELSON and TROTT, Circuit Judges, and STEPHENS, Senior District Judge.*

TROTT, Circuit Judge:

Appellee John Joseph Hennessy was convicted in Arizona state court of attempted armed robbery, burglary, and two counts of class 2 kidnapping. After trial, his appellate attorney discovered that the trial judge had not instructed the jury on an element that had not been contested of the crime of kidnapping. Hennessy then filed with the state trial court a petition for post-conviction relief based on this error. The petition was granted by the trial court, but reversed by the state court of appeals which explicitly found the error harmless. After the state supreme court denied review, Hennessy filed a petition for a writ of habeas corpus in federal court. The district court granted the writ, apparently agreeing that the instructional failure deprived Hennessy of due process of law. We now reverse.

## I

### Facts

Armed with a pistol, Hennessy entered the lobby of the Follies Burlesque Theater in Tucson, Arizona on July 12, 1982. He purchased a ticket from employee Jack Bruce and went into the theater's viewing room. Bruce then went into the rest room. When Bruce returned to the lobby, Hennessy pointed his firearm at him and announced he was robbing the theater. He forced Bruce into another room where employee Rene Caudill was located. Hennessy tied up Bruce and Caudill with tape, and he told Bruce he would "blow [Caudill] away" if Bruce moved.

While Hennessy was searching the theater for money, he was unexpectedly interrupted by Benjamin Reese, a third employee. Upon seeing Reese, Hennessy fled the premises, leaving Bruce and Caudill still bound with tape in the back room. At trial, Reese described Hennessy's flight as follows:

I started trying to get his [Hennessy's] attention. So I came out here [indicating his position by referring to a photograph].... He was bustling. When I got to the doorway, he was already out to the edge of the building.... I asked him to stop. He made no attempt to stop or anything.... I moved a little quicker.... I tried to get the man's attention again. I said come back, let's talk about it. He wasn't about to stop. There was nothing more than an acknowledgment he knew I was there.... Once I had rationalized that he wasn't going to stop and come back I just started taking down the tag number that was on the car.

After Hennessy's abrupt departure, Bruce and Caudill managed on their own to remove their restraints. They were uninjured.

## II

### State Court Proceedings

Hennessy was captured and charged with various felonies, including "class 2 felony kidnapping." He was convicted of two counts of this offense, but after the trial it was discovered that the court had not instructed the jury that to find Hennessy guilty of class 2 kidnapping, they had to find that Hennessy did not "voluntarily release" Caudill and Bruce. Under Arizona law, if a kidnapper "voluntarily releases" his victim, his crime is reduced from a class 2 to a class 4 felony, which carries a lesser penalty. Arizona Revised Statutes § 13–1304(B). Hennessy's counsel neither asked for an instruction on this issue nor objected to the instructions that were given.

* The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

The effect of the state trial judge's failure to instruct on voluntary release was first addressed by the state trial court in a post-trial proceeding requested by Hennessy. The purpose of the hearing was to explore the ramifications of this failure. The trial court concluded a mistake had been made, and granted a new trial. After a rehearing granted at the state's request, the court confirmed its earlier ruling granting relief, believing it was legally bound by Arizona precedent. However, the court found that "[t]he evidence would not support a finding of voluntary release."

The state then appealed. The Arizona Court of Appeals agreed with and accepted Judge Velasco's factual finding, but disagreed with his view of the effect of the instructional omission. The court reinstated Hennessy's kidnapping convictions as class 2 felonies and the sentences originally imposed, finding "there was *no evidence* to support a finding that defendant voluntarily released the victims", and concluding that "the court's failure to instruct on voluntary release constituted error which is harmless beyond a reasonable doubt." (emphasis added). Hennessy appealed this decision to the Arizona Supreme Court, which denied his petition for review.

### III

*Proceedings in the District Court*

The federal district court summarily granted Hennessy's petition for a writ of habeas corpus without explanation. Its order filed September 7, 1989 states only the following:

This matter having come on for a regularly scheduled hearing on Monday, August 28, 1989, the parties having been represented by counsel, and the court having reviewed the pleadings, and considered the arguments advanced by counsel:

It is therefore ordered that the Writ of Habeas Corpus is granted. It is further ordered that the case is remanded to Division 11 of Pima County Superior Court with orders to reinstate the sentence previously imposed on February 12, 1988 by the Hon. Bernardo P. Velasco

sentencing petitioner on counts five and seven as class 4 felonies and vacating prior orders sentencing petitioner for class 2 felonies for those offenses.

With all respect to the district court, this treatment of Hennessy's petition leaves us with no way of reviewing its judgment. We are unable to discern why the court acted as it did. In view of the manner in which this matter had been analyzed and decided in the state courts, the district court may well have violated the rule of *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (*"Sumner I"*), confirmed in *Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (*"Sumner II"*).

In *Sumner I*, the Supreme Court reversed this court for failure to comply with 28 U.S.C. § 2254(d), which mandates applying a presumption of correctness to factual determinations made by state courts when we review their findings in federal habeas proceedings. In reversing and remanding for further proceedings, the Court issued the following directive:

In order to ensure that this mandate of Congress is enforced, we now hold that a habeas court should include in its opinion granting the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'

449 U.S. at 551, 101 S.Ct. at 771 (quoting § 2254(d)(8)).

Arizona regards "voluntary release" as an element of the offense of kidnapping and a factual matter to be determined by the trier of fact. Thus, Arizona's finding of 'no evidence to support voluntary release' is primarily fact-driven, notwithstanding its obvious relationship to the statute's legal standard. In our view, this finding qualifies for deference under 28 U.S.C. § 2254(d). In the present case, it appears that the district court did not abide by either section 2254(d) or *Sumner I*, both of which impose sua sponte responsibilities on a federal court that collaterally reviews

a state court conviction. Confronted with a state court factual determination that there is 'no evidence to support voluntary release', the district court may have not accorded appropriate deference to Arizona's trial court, court of appeals, and supreme court. *See Sumner II*, 455 U.S. at 592–93, 102 S.Ct. at 1304 ("the presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact...." [1]). In *Sumner II*, the Court recognized the challenge of distinguishing between questions of law and questions of fact, but concluded that "[a]lthough the distinction ... is not always easily drawn, we deal here with a statute [§ 2254(d) ] that requires the federal courts to show a high measure of deference to the fact-findings made by the state courts." 455 U.S. at 598, 102 S.Ct. at 1307. Moreover, the district court's abbreviated order fails to indicate how it viewed the question of harmless error. Under the circumstances, it would be appropriate to reverse the district court and remand this matter for further proceedings in accord with 28 U.S.C. § 2254(d), *Sumner I & II*, and the harmless error rule. Because of the considerable appellate judicial resources already spent reviewing this matter, however, including an exhaustive review of the entire record, we choose not to do so. Instead, finding ourselves in as advantageous a position as the district court to evaluate the record, we will conduct our own harmless error analysis.

## IV

### The Error

■ Arizona law defines kidnapping as a class 2 felony, "unless the victim is released voluntarily by the defendant without physical injury in a safe place prior to arrest and prior to accomplishing [certain] enumerated offenses ... in which case it is

a class 4 felony." Arizona Revised Statutes § 13–1304(B). Although the state supreme court has yet to visit the issue, the state court of appeals has interpreted this statutory language to make the absence of voluntary release an element of second-degree kidnapping that the state must prove beyond a reasonable doubt. *State v. McMillen*, 154 Ariz. 322, 742 P.2d 823, 825 (1987) (citing *State v. Sterling*, 148 Ariz. 134, 713 P.2d 335, 337 (1985)).

■ Under Arizona law, this is an issue for the trier of fact to decide. It is undisputed that the trial court in the present case did not instruct the jury in this regard. Failure to properly instruct the jury regarding an element of the charged crime is a constitutional error that deprives the defendant of due process, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), unless—as we discuss below—the error can be treated as harmless.

## V

### The Harmless Error Doctrine: Is it Applicable?

We must next determine whether this error automatically entitles Hennessy to a new trial on the kidnapping charges, or if it is instead subject to the harmless error analysis announced by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See Sheppard v. Rees*, 909 F.2d 1234 (9th Cir.1990).

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Supreme Court held that the burden of proof on any essential element of an offense can never be shifted to the defense; the prosecution must prove each and every element of the offense beyond a reasonable doubt. Without abandoning the precedential value of *Sandstrom*, the Court recognized seven years later that an instruction that improperly shifts the burden on

---

**1.** The subsequent history of *Sumner I* illustrates the Supreme Court's resolve to adhere to the presumption of correctness under 28 U.S.C. § 2254(d). On remand, our court failed to follow *Sumner I's* lead and in *Sumner II*, the court again vacated our judgment and remanded with terse directions to follow instructions. We rendered a decision, *Mata v. Sumner*, 696 F.2d 1244 (9th Cir.1983), and once again the Supreme Court granted certiorari. Before the court could review the case for the third time, it became moot and the appeal was dismissed. *Mata v. Sumner*, 721 F.2d 1251 (9th Cir.1983).

an essential element is subject to harmless error analysis. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). However, the Court distinguished instructional error from a directed verdict against a criminal defendant; in the latter instance, "harmless-error analysis presumably would not apply." 478 U.S. at 578, 106 S.Ct. at 3106.

Hennessy seizes upon this language and argues that the trial court's actions in the present case amount to a directed verdict for the state. The Sixth Circuit accepted this argument in *Hoover v. Garfield Heights Mun. Court*, 802 F.2d 168, 177 (6th Cir.1986), *cert. denied*, 480 U.S. 949, 107 S.Ct. 1610, 94 L.Ed.2d 796 (1987). The *Hoover* court relied on *Rose* to hold that "the trial court's failure to instruct the jury that it had to find that [the defendant's] arrest was lawful in order to convict him of resisting arrest prevented the jury from considering that element and constituted a directed verdict on it." The Sixth Circuit concluded that an instructional error of this kind cannot be harmless. In its opinion, the court discusses this issue at some length, *see* 802 F.2d at 175–79, but its analysis appears to have been overtaken by subsequent legal developments. The Sixth Circuit itself has recently identified *Hoover* as a case that "may not be long for this world in light of recent Supreme Court trends," citing *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987), and *Rose*. *U.S. v. Dotson*, 895 F.2d 263, 265 (6th Cir.1990).

■ We respectfully disagree with *Hoover*, and decline to adopt a per se approach to this issue. The present case, as demonstrated in Section VI below, provides a concrete example of why it would be a quixotic exercise of form over substance to deny under *all circumstances* the application of harmless error analysis to an instructional omission on an uncontested is-

sue. *See U.S. v. Kerley*, 838 F.2d 932 (7th Cir.1988).

Hennessy's and *Hoover's* reliance on *Rose* is misplaced. Not only does *Rose* not support equating failure to instruct the jury on *every* element with a directed verdict, it expressly states the Court's intention to apply *Chapman* broadly. While the justices noted that harmless error analysis is inappropriate in certain discrete contexts, *e.g.*, denial of counsel and judicial bias, "they are the exception and not the rule. Accordingly, if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." *Rose*, 478 U.S. at 578–79, 106 S.Ct. at 3106 (citation omitted). More dispositively, however, the Supreme Court subsequently relied on *Rose* to hold that instructional omission of an element of the offense was subject to harmless error analysis. *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). Writing for the Court, Justice White said:

> By leaving open the possibility that petitioners' convictions can be preserved despite the instructional error, we do no more than we did in *Rose*. To the extent that cases prior to *Rose* may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standards of proof, see, *e.g.*, *Cabana v. Bullock*, 474 U.S. 376, 384 [106 S.Ct. 689, 696, 88 L.Ed.2d 704] (1986), after *Rose*, they are no longer good authority.

*Id.* at 504 n. 7, 107 S.Ct. at 1922 n. 7. This broad application of the harmless error doctrine is designed to conserve judicial resources by avoiding retrial if, in cases such as this, "it can be said beyond a reasonable doubt that the jury's verdict ... was not affected by the erroneous instruction." *Pope*, 481 U.S. at 502, 107 S.Ct. at 1922.

Finally, we find confirmation for our conclusion in *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989),[2]

**2.** The law in this area is an unfinished symphony. The Court split 5–4 in *Carella* as to how a reviewing court should go about determining

whether an error of this sort is harmless. In addition, the Court uses the term "predicate

wherein "mandatory directions [to the jury] directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which [the defendant] was charged. The instructions also relieved the state of its burden of proof articulated in *Winship*, namely proving by evidence every essential element of Carella's crime beyond a reasonable doubt." 491 U.S. at 266, 109 S.Ct. at 2420. Accordingly, the court concluded that Carella had been denied due process of law, but remanded the case with directions to determine if the error was harmless under *Chapman* and *Rose*. In so doing, the majority quoted *Rose:*

"In many cases, the predicate facts conclusively establish intent, so that no rational jury could find the defendant committed *the relevant criminal act but did not intend to cause the injury* . . . . In that event the erroneous instruction is simply superfluous: the jury has found, in *Winship's* words, 'every fact necessary' to establish every element of the offense beyond a reasonable doubt."

*Carella,* 491 U.S. at 266, 109 S.Ct. at 2421 (citing *Rose,* 478 U.S. at 580–81, 106 S.Ct. at 3107) (citations omitted) (emphasis added). The precise instructions on remand were to determine "whether no rational jury could find the predicate *acts* but fail to find the fact presumed." *Carella,* 109 S.Ct. at 2421 (emphasis added).[3]

## VI

### *Was the Error Harmless?*

■ A detailed review of the complete record leads us to conclude beyond a reasonable doubt that the error was harmless. The indictment, which was read to the trial jury after it was selected and before opening statements, explicitly described the charged kidnappings as class 2 felonies. Significantly, Hennessy's counsel effective-

ly conceded the relevant criminal acts in his opening statement:

Mr. Don: Okay. Now there are two things that aren't in question here, and that's that on July 10, 1982 [referring to other counts], Janet Craig at the Whitaker Pools at 8838 East Broadway, that she was held up. There is no question that on July 12, 1982, at about 1:00 o'clock Jack Bruce and Renee Caudill, that they were held up. The question is by whom?

Now, Mr. Lauritzen [the prosecutor] believes that he can prove beyond a reasonable doubt that Mr. Hennessy did it. But, ladies and gentlemen, the evidence will show that on July the 10th Mr. Hennessy was with his wife. Where was he? He was at home. . . .

Now, two days later, July the 12th, we have the Follies theater robbery. Again, there is no question that we have that robbery. But what the evidence will show is that Mr. Hennessy had spent the, most of the morning with his daughter.

The evidence will show that at 1:00 o'clock, approximately the time this was happening he wasn't anywhere near the Follies theater.

At no point during the trial did Hennessy's counsel present any evidence or arguments that would dispute the commission of the crimes alleged, including the class 2 felony kidnappings. His final argument to the jury at the close of the trial began with the same concessions he made during opening statement regarding the commission of the crimes. No objection was made to the instructions; no request was made for an instruction on voluntary release. The defense essentially made the logical tactical decision to put all its eggs in one basket: mistaken identity; and by returning verdicts of guilty, the jury established that

---

facts" for which no clear definition has been given. Additional guidance and clarification would be helpful.

**3.** In rejecting Hennessy's position that *Rose* prohibits application of harmless error analysis in cases such as this, we are likewise rejecting his argument that *Rose* overruled prior Ninth Circuit cases that recognized that the trial court's failure to instruct on an element of the crime

charged can be harmless. We conclude that *United States v. King,* 587 F.2d 956 (9th Cir. 1978), and *United States v. Valdez,* 594 F.2d 725 (9th Cir.1979), both of which apply harmless error analysis to instructional omissions, are still controlling precedent on this issue. *See also U.S. v. Smith,* 891 F.2d 703, 709 (9th Cir. 1989).

Hennessy was the person who committed the crimes he conceded had taken place. Insofar as *Rose's* "predicate facts" and the "relevant criminal acts" are concerned, the jury necessarily found that a person invaded the Follies Burlesque Theater on July 12, 1982. The jury also found that the invader committed the crime of robbery, and that he also committed the crime of kidnapping with respect to his treatment of Bruce and Caudill. The jury was properly instructed as to the elements of robbery and kidnapping, if not the difference between class 2 and class 4.

Referring again to the transcript of the trial, it is evident that the Arizona courts' finding—rendered on the basis of the predicate facts found by the jury—that there was no evidence to support voluntary release is fully supported by the record. The finding is thus presumed correct. Webster's definition of "release" is "to set free from confinement, restraint, or bondage: liberate; to unfasten, free, or to let go of." Hennessy released no one. He fled when his robbery was interrupted, leaving his victims wrapped in tape. They released themselves by peeling the tape off their bodies after Hennessy was frightened off by Reese. "Voluntary," in this regard, means "arising from one's own free will," or "acting or done with no external persuasion or compulsion." Webster's II New Riverside University Dictionary. Simply to state this definition is to prove it cannot apply to either Hennessy's behavior as he fled from his crimes or to his state of mind. Thus, the missing instruction was irrelevant to the trial, utterly superfluous, and its absence was harmless beyond a reasonable doubt. Hennessy's sole defense was mistaken identity, a defense that was not impaired by this trivial error.

The Supreme Court counsels that one of the objectives of harmless error rule is to promote public confidence in the criminal justice system, confidence that dissolves when the system releases people from responsibility for serious crime because of technicalities. As Chief Justice Rehnquist said in *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986):

The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States v. Nobles*, 422 U.S. 225, 230 [95 S.Ct. 2160, 2166, 45 L.Ed.2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ("Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it").

To recapitulate, the facts as conceded by the defense and found by the jury are not rationally susceptible of the conclusion that Hennessy voluntarily released Bruce and Caudill. No reasonable jury returning the verdicts rendered in this case could have concluded under these circumstances that Hennessy was guilty only of class 4 rather than class 2 kidnapping. Why? Because there was no evidence of voluntary release, none. The possibility that the result in this case would have been different had the jury been instructed on voluntary release is zero.

## VII

### *Conclusion*

The judgment of the district court is REVERSED and the matter is REMANDED with orders to deny the petition for a writ of habeas corpus.