**Donald OWENS, Petitioner-Appellant,**

**v.**

**Dale FOLTZ, Respondent-Appellee.**

**No. 85–1505.**

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1986.

Decided July 30, 1986.

Rehearing Denied Aug. 28, 1986.

F. Martin Tieber (argued), Lansing, Mich., petitioner-appellant.

Thomas A. Kulick (argued), Dept. of Atty. Gen., Corrections Div., Lansing, Mich., for respondent-appellee.

Before WELLFORD and NELSON, Circuit Judges and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

This is a habeas corpus petition brought by Owens, who had been accused and convicted of armed robbery. Because of a previous felony conviction, Owens has been sentenced to life imprisonment. Owens challenges, among other things, the process by which he was identified. For the reasons stated below, we affirm the district court's denial of the habeas corpus petition.

On Christmas night of 1980, two robbers gained entrance at gunpoint to the house of Harold Crow and his cousin, Beverly Ford. A neighbor noticed a car parked outside Crow's house with the engine running and a man behind the wheel. He also observed two men coming out of the house carrying a variety of personal items. The man noted the type of car and recorded the license plate number. Later that night, the police located the vehicle (which belonged to Owens' nephew, Bronson Bulger) parked in front of the house at which Mr. Bulger attended a family Christmas party. When the police fingerprinted the car, some of the prints matched those of the petitioner, Owens.

Six weeks after the robbery, the police placed Owens in a lineup to see if he could be identified. The victims, Crow and Ford, were told by the police that they should not identify anyone unless they were "100% sure." They were also told that there was independent evidence against one of the people in the lineup and the investigation would continue regardless of whether they could make an identification.

Neither victim could positively identify Owens, and they marked the lineup cards to that effect. However they each separately told the officer in charge of the lineup that they were "pretty sure" and "75% sure" that Owens was one of the robbers. These statements were made, so far as can be determined by the record, in the presence of defense counsel. Later, at the preliminary examination, both Ford and Crow pointed out Owens as one of the robbers. Owens and his codefendant, however, were the only black men in the room at the time of the preliminary examination, and they were sitting at the defendants' table.

The petitioner claims that this identification procedure was unduly suggestive. He argues that the remarks of the police officer during the lineup which indicated that they had evidence against the suspect, coupled with an identification during the preliminary exam in which the witnesses could easily remember Owens from the lineup, tainted the identification.

In order to show that Owens was denied due process of law, the identification procedure must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *United States v. Russell*, 532 F.2d 1063 (6th Cir.1976). The Supreme Court has set forth the following factors to be considered in determining whether there has been a misidentification:

1) The opportunity of the witness to view the criminal at the time of the crime,

2) the witness' degree of attention,

3) the accuracy of the witness' prior description of the criminal,

4) the level of certainty demonstrated by the witness at the confrontation, and

5) the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

A review of the complete record reveals that the victims had ample opportunity to view the robbers and were unequivocal in their identification of them. Although the robbers were masked, the masks did not obscure their faces enough to prevent identification. The testimony of Beverly Ford is especially noteworthy:

Q: Okay. Now, you have identified these men in the Courtroom as being the ones that were there that night. Were they wearing anything to cover themselves?

A: It looked like to me that they had a thick hair net on.

. . . .

Q: Okay. And how were they wearing their hair nets?

A: On their face.

Q: Both of them had hair nets on?

A: Yes.

Q: Okay. Well, did they—how, if they had these hair nets on can you identify them?

A: Because you could see through them.

Q: Okay. Were their faces flattened out or—

A: No.

Q: No?

A: Looked like the hair net was kind of stretched out. It wasn't pressed up against their face.

Q: Okay. So you have—there is no doubt in your mind that these two men that you identified this morning were the men in your house on Christmas night?

A: Right.

Tr. transcript Vol. II, pp. 56–57.

Harold Crow also testified that he could see Owens' face through the mask. Tr. transcript Vol. I, p. 186.

The petitioner makes much of the fact that neither victim could mark the lineup card. They both testified at trial that they were not 100% sure of the identification at the time of the lineup. The basis of the witness' identification was thoroughly examined by defense counsel at the time of the trial. The identification procedure was not so suggestive as to rise to the level of a consitutional violation.

■ Owens also argues that the trial court's failure to allow two different lines of questioning resulted in a denial of his constitutional right of confrontation. The court refused to allow cross-examination of one of the victims, Harold Crow, on possible drug dealings and limited the testimony of the police officer who apprehended another suspect, Willie Hill, at the site of the getaway vehicle. In both cases the judge ruled that the information to be gleaned was either not relevant or was significantly more prejudicial than probative. We cannot say that this ruling, as a matter of federal constitutional law, was incorrect. The defendant's theory was based on the merest speculation, and the testimony sought was of minimal probative value. "Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

■ Owens claims that the police investigation was so inadequate as to amount to a due process violation. This is especially so, he argues, because the police failed to take fingerprints at the victims' house. In a habeas corpus review, a court can reverse for inadequate investigation only when the petitioner can show a deprivation of due process tantamount to a suppression of relevant evidence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The facts surrounding the investigation, and alleged lack of investigation, were at issue during the trial. The jury was free to consider this in determining whether the state had proved its case beyond a reasonable doubt. As the district court noted, the conviction was based primarily on the eyewitness identifications and there was little likelihood that fingerprints would have been found in the house. The Michigan Court of Appeals found that the police did not withhold evidence or fail to investigate this case properly. State court findings of fact are entitled to a presumption of correctness by the federal court. *Sumner v. Mata II*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). Owens gives us nothing but conjecture upon which to reverse, and we decline to do so.

■ Owens lastly argues that the trial court erred in giving certain jury instructions. However, if the state court finds the instructions correct (as it did here), then only where the instructions infect the fairness of the entire trial will due process be violated. *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

Since no alleged error rose to the level of constitutional harm, habeas corpus relief cannot be granted.