811 F.2d 606
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John P. MCDERMOTT, Jr., Petitioner-Appellant,
v.
E.P. PERINI, Respondent-Appellee.
 No. 86-3181.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner John McDermott, Jr., presently serving a sentence of fifteen years to life for his conviction of murder by an Ohio jury, appeals the judgment of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. The issues raised are (1) whether petitioner was denied his rights under the Sixth and Fourteenth Amendments because the trial court refused to instruct the jury on an Ohio statute that petitioner asserts defines an essential element (voluntariness) of the offense charged; (2) whether petitioner was denied due process and a trial by jury because by refusing to give an instruction on voluntariness the trial court denied petitioner the opportunity to have his defense presented to the jury; (3) whether petitioner was denied due process because the trial court refused to instruct the jury on the lesser included offense of voluntary manslaughter; and (4) whether petitioner was denied a fair trial due to prosecutorial misconduct. For the reasons discussed below, we affirm.
 
 I.
 
 2
 On November 12, 1980, an Ohio grand jury indicted petitioner for aggravated murder in violation of Ohio Rev.Code Ann. Sec. 2903.01.[1] Petitioner entered pleas of not guilty and not guilty by reason of insanity. Trial was held from March 26, 1981, to March 31, 1981.
 
 
 3
 The evidence showed that petitioner regularly visited the victim, Karen Barnes, at her apartment. On the afternoon of November 4, 1980, when petitioner arrived at the apartment, Ms. Barnes was not yet home from work, although her two children, Greg, age eleven, and Steven, age eight, were already home from school. Ms. Barnes arrived around 5:00 p.m.
 
 
 4
 At 11:00 p.m., Greg was awakened in his upstairs bedroom by the telephone, which rang six times; no one answered it. Greg heard petitioner and Ms. Barnes arguing downstairs. Ms. Barnes was yelling about petitioner's going through her personal things. Greg then heard his mother call for him. Greg went to the landing and observed petitioner stabbing Ms. Barnes. Petitioner ran upstairs and ordered Greg to get in bed. Petitioner then went into the bathroom and washed his hands. He then went back downstairs, but returned upstairs shortly to Ms. Barnes' bedroom, where he disconnected the telephone. Petitioner went downstairs again, turned the television on with the volume on high, and exited the apartment. After about fifteen minutes, Greg and Steven went downstairs and found their mother dead in the kitchen. Greg then went to a neighbor's house, and the police were notified.
 
 
 5
 When the police arrived, they discovered on the wall next to the victim's body a knife rack with two knives, although there were spaces for three. The murder weapon was not in the apartment. The third knife, which was the murder weapon, was later found in a nearby river. An autopsy revealed at least thirty stab wounds.
 
 
 6
 Petitioner's pleas of not guilty and not guilty by reason of insanity were based upon the same medical defense, viz., that the murder was the result of petitioner's suffering a psychomotor seizure as a result of a brain disease known as psychomotor epilepsy. Petitioner presented a great deal of medical evidence in support of his theory. It is sufficient to note for the present purposes that evidence was adduced that petitioner had suffered from psychomotor epilepsy for a period of years prior to the murder, that he was suffering from a seizure at the time of the murder, and that, consequently, petitioner was unable to make a distinction between right and wrong or to control his behavior; i.e., petitioner's actions were involuntary.
 
 
 7
 The jury rejected petitioner's insanity defense and returned a verdict of guilty. On direct appeal, petitioner raised numerous issues, including those asserted in his habeas petition. The Ohio Court of Appeals affirmed the conviction and sentence. Of particular importance to the present appeal is the court's holding that, " 'Voluntariness' is not an element of the crime of aggravated murder." Joint Appendix at 24. The Ohio Supreme Court summarily denied petitioner's request for leave to appeal, prompting petitioner to file the present action.
 
 II.
 
 8
 Petitioner's first and second arguments surround the trial court's refusal to instruct the jury on Ohio Rev.Code Ann. Sec. 2901.21, which provides in pertinent part:
 
 
 9
 Requirements for criminal liability.
 
 
 10
 (A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:
 
 
 11
 (1) His liability is based on conduct which includes either a voluntary act, or an omission to perform an act or duty which he is capable of performing;
 
 
 12
 (2) He has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense.
 
 
 13
 * * *
 
 
 14
 (C) As used in this section:
 
 
 15
 * * *
 
 
 16
 (2) Reflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts.
 
 
 17
 Id.
 
 A.
 
 18
 Petitioner first argues that, under Ohio law, voluntariness is an element of the crime of murder and that, accordingly, it was constitutional error for the trial court to fail to instruct the jury that the prosecution has the burden of proving, beyond a reasonable doubt, that the acts which caused the killing were voluntary. The failure to instruct on an essential element of a crime is constitutional error of a magnitude such that it can never be harmless. Hoover v. Garfield Heights Municipal Court, 802 F.2d 168, 177 (6th Cir.1986). See Glenn v. Dallman, 686 F.2d 418, 421 (6th Cir.1982). Thus, the critical inquiry as to the present issue is whether voluntariness is an element of the crime of murder in Ohio.
 
 
 19
 To our knowledge, the Ohio Supreme Court has not addressed this issue. Petitioner has directed our attention to numerous Sixth Circuit habeas cases containing language indicating that, under Ohio law, voluntariness is an element of the crime. See Takacs v. Engle, 768 F.2d 122, 126 (6th Cir.1985) ("Ohio requires a 'voluntary act' as an element of every crime."); see also Wood v. Marshall, 790 F.2d 548, 550 (6th Cir.1986); Howze v. Marshall, 716 F.2d 396, 400 (6th Cir.1983), cert. denied, 465 U.S. 1013 (1984); Thomas v. Arn, 704 F.2d 865, 876 (6th Cir.1983). But see White v. Arn, 788 F.2d 338, 345 (6th Cir.1986) (stating that a voluntary act is not an element of the crime of murder in Ohio). However, the State is correct that the language relied on by petitioner in the Sixth Circuit cases is dicta. In each case, the issue presented was whether it was constitutional error for the state to place the burden of proving a particular defense on the accused. The petitioners argued that the defenses at issue negated an element of the offense charged, including voluntariness. It was necessary that we at least assume that voluntariness was an element; otherwise, the petitioner's arguments would have had no constitutional significance. See, e.g., White v. Arn, 788 F.2d at 343-44 ("The proper approach ... is first to determine the elements of murder, and second to determine whether the defense ... necessarily negates any of those elements.") However, in each case we determined that the defense at issue did not negate the voluntary act requirement set forth in Ohio Rev.Code Ann. Sec. 2901.21(A). Given these holdings, any "finding" that voluntariness is an element was not "essential to determination of the case." Black's Law Dictionary 409 (5th ed. 1979) (defining "Dictum"). We therefore do not feel bound by the cases relied on by petitioner as a matter of stare decisis.
 
 
 20
 Normally, we would be inclined to consider whether we nonetheless should follow our prior language in Takacs, dicta or not. However, we feel bound to follow the contrary pronouncement of the Ohio Court of Appeals in the direct appeal of petitioner's conviction. See Mullaney v. Wilbur, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"). Cf. Long v. Smith, 663 F.2d 18, 22-23 (6th Cir.1981) ("In a habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law. Federalism requires that we accept the state Supreme Court's decision on state law as being correct as state courts must respect the decisions of federal courts on federal law."), cert. denied, 455 U.S. 1024 (1982). Accordingly, because the Ohio court has determined that voluntariness is not an element of the crime of murder in Ohio, there was no constitutional error in the trial court's refusal to instruct that the prosecution bore the burden of proving a voluntary act.[2]
 
 B.
 
 21
 Petitioner's second argument is that even if the voluntariness requirement set forth in section 2901.21 is not an element of the crime of murder, it is surely a defense. Petitioner argues that the failure to instruct the jury on his theory of the case was a violation of due process. Petitioner relies on United States v. Garner, 529 F.2d 962 (6th Cir.), cert. denied, 429 U.S. 850 (1976), wherein we held on direct appeal that "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." Id. at 970. In the instant case, petitioner's theory of defense "finds some support in the evidence and in the law."
 
 
 22
 However, in a habeas proceeding the petitioner must satisfy a much higher standard:
 
 
 23
 The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," ... not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' "....
 
 
 24
 ... An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.
 
 
 25
 Henderson v. Kibbe, 431 U.S. 145, 154-55 (1977) (citations and footnote omitted); see also Martin v. Foltz, 773 F.2d 711, 718 (6th Cir.1985), cert. denied, 106 S.Ct. 3336 (1986). "[I]f the state court finds the instructions correct (as it did here), then only where the instructions infect the fairness of the entire trial will due process be violated." Owens v. Foltz, 797 F.2d 294, 296 (6th Cir.1986).
 
 
 26
 In the present case, the question thus becomes whether the failure to instruct on section 2901.21 so infected the entire trial that the conviction violates due process. In Henderson, the Supreme Court found no constitutional error in the trial court's failure to instruct on causation in part because the instruction on recklessness encompassed the gist of causation. The Court reasoned that "since it is logical to assume that the jurors would have responded to an instruction on causation consistently with their determination of the issues that were comprehensively explained, it is equally logical to conclude that such an instruction would not have affected their verdict." 431 U.S. at 156 (footnote omitted).
 
 
 27
 A similar result is required in the present case. The trial judge instructed the jury, in part, that:
 
 
 28
 Before you can find the defendant guilty of the charge, you must find beyond a reasonable doubt:
 
 
 29
 1) That Karen Barnes was a living person and that her death was caused by the defendant in Geauga County, Ohio, or [sic] or about the 4th day of November, 1980;
 
 
 30
 2) That the killing was done purposely;
 
 
 31
 You will note that purpose to kill is an essential element of the crime of murder.
 
 
 32
 A person acts purposely when it is his specific intention to cause a certain result, that is the death of another. It must be established that at the time in question there was present in the mind of the defendant a specific intention to cause the death of Karen Barnes.
 
 
 33
 Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent means [sic] the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 
 
 34
 The purose [sic] with which a person does an act is determined from the manner in which it was done, the weapon used and all the other facts and circumstances in evidence.
 
 
 35
 If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to kill may be inferred from the use of the weapon.
 
 
 36
 Joint Appendix at 246-47.
 
 
 37
 In our view, it would simply not have been possible for the jury to conclude that petitioner acted purposefully and at the same time to conclude that the killing was not the result of a voluntary act. Petitioner strenuously argues that purposefulness and voluntariness are not the same and notes that Ohio Rev.Code Ann. Sec. 2901.21(A) draws a distinction between the voluntariness requirement and the mens rea requirement. However, even if we assume that "[i]n a strict sense, an additional instruction on [voluntariness] would not have been cumulative," Henderson v. Kibbe, 431 U.S. at 156, the writ must nonetheless be denied.
 
 
 38
 As stated, in Henderson v. Kibbe, the Court found no constitutional error in the failure of the trial court to instruct on an issue where it was "logical to assume that the jurors would have responded to [the requested instruction] consistently with their determination of the issues that were comprehensively explained." Id. at 156. In such a situation "it is equally logical to conclude that such an instruction would not have affected their verdict." Id. (footnote omitted).
 
 
 39
 In the present case it is logical to conclude that the jury would have responded to an instruction on voluntariness consistently with their determination of the purposefulness element, which was comprehensively explained. As set forth supra, the trial judge instructed the jury that "purpose is a decision of the mind to do an act with a conscious objective of producing a specific result." If, as is petitioner's theory, the murderous acts were caused by uncontrolled electrical discharges in petitioner's brain, there logically would have been no decision formed in petitioner's mind to do the act. However, the jury necessarily concluded that petitioner did in fact form a decision in his mind to do the act. Accordingly, it is logical to assume that had the jury been instructed on voluntariness, they would have rejected the defense consistent with their finding that petitioner acted purposefully in killing the victim.[3]
 
 
 40
 Put another way, the mind cannot carry out its decisions to act alone; it must translate that decision into physical activity by engaging the voluntary muscles of the body. Thus, the jury having concluded that petitioner acted purposefully, it is logical to conclude that the jury would have further concluded that his actions were the result of the decision petitioner formed in his mind to stab the victim, i.e., that his actions were voluntary and not the result of uncontrolled electrical discharges in the brain.
 
 
 41
 Petitioner argues that the jury did not necessarily make a finding that encompassed the defense theory because the trial court instructed that the jury could infer purposefulness from the undisputed fact that a knife was used. Petitioner further notes that it tailored its evidence to the voluntariness requirement and that his witnesses used the term voluntariness, rather than purposefulness.
 
 
 42
 If this were a direct appeal we might find these arguments more persuasive. However, in this collateral proceeding, we must assure ourselves only that petitioner received a fundamentally fair trial. Under the circumstances of this case, "we reject the suggestion that the omission of [an instruction on the voluntariness] issue 'so infected the entire trial that the resulting conviction violated due process.' " Henderson v. Kibbe, 431 U.S. at 156-57.
 
 C.
 
 43
 Petitioner next argues that he was denied due process because the trial court failed to instruct on the lesser included offense of voluntary manslaughter. Petitioner correctly notes that this court has held that "the failure of a state court to instruct the jury on lesser included offenses raises a question that is cognizable on habeas corpus review." Brewer v. Overberg, 624 F.2d 51, 52 (6th Cir.1980) (per curiam), cert. denied, 449 U.S. 1085 (1981). The Brewer court further noted that "[t]he Ohio courts have repeatedly held that it is prejudical and reversible error for the trial court to refuse an instruction on lesser included offenses if the evidence could reasonably support a verdict on such offenses." Id. at 53 (emphasis supplied).
 
 
 44
 The issue then is whether the evidence in the present case reasonably could have supported a verdict on the offense of voluntary manslaughter. Ohio Rev.Code Ann. Sec. 2903.03(A) provides:
 
 
 45
 No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.
 
 
 46
 Before the Ohio Court of Appeals, petitioner supported his claim by relying on the testimony of Dr. Tucker that petitioner told Dr. Tucker that he and the victim argued, that he was sure Ms. Barnes was less than honest in their relationship when she declined to answer the telephone, that Ms. Barnes got a knife and he grabbed it from her, that Ms. Barnes went for another knife, and it was then that he killed her. The Ohio Court of Appeals and the district court held that this evidence could not support a request for a voluntary manslaughter instruction because, under Ohio Rev.Code Ann. Sec. 2945.40(D), statements made by a defendant in an examination relating to his mental condition at the time of the commission of the crime are inadmissible against the defendant on the issue of guilt. Petitioner apparently accepts this holding because he does not presently rely on this evidence.
 
 
 47
 Instead, petitioner cites Greg Barnes' testimony that he heard petitioner and Ms. Barnes arguing, testimony showing that the victim suffered over 30 stab wounds, and testimony that the murder weapon was taken from a knife rack no more than three feet from where the victim was positioned. Petitioner asserts this evidence is consistent with and suggestive of a sudden attack provoked by sudden rage.
 
 
 48
 The evidence petitioner now relies on may be suggestive of a sudden attack provoked by sudden rage. However, the mere fact that petitioner and the victim were arguing loudly does not establish the requirement that the rage be brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force. Accordingly, petitioner's claim is without merit. See O'Guin v. Foltz, 715 F.2d 397, 399 (6th Cir.1983) (unless there is evidentiary support for the lesser included offense instruction, there can be no violation of due process from the refusal to give it).
 
 D.
 
 49
 Petitioner's final argument is that the prosecutor engaged in misconduct such that he was denied a fair trial. In support of his claim, petitioner relies on direct appeal cases such as United States v. Leon, 534 F.2d 667 (6th Cir.1976). However, in Leon, the defendant's conviction was reversed "in the exercise of [the court's] supervisory powers." Id. at 682. In a habeas proceeding, the review is " 'the narrow one of due process, and not the broad exercise of supervisory power that [it] would possess in regard to [its] own trial court.' " Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (quoting DeChristoforo v. Donnelly, 473 F.2d 1236, 1240 (1st Cir.1973)). This court has stated that "[b]efore habeas relief is granted, the prosecutor's statements must be so egregious as to render the trial fundamentally unfair." Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc) (citation omitted).
 
 
 50
 We have reviewed the actions of the prosecutor to which petitioner objects. Although the complained of remarks may have been deliberately placed before the jury, the remarks were not extensive, and the proof of guilt was overwhelming. On balance, we do not believe the remarks to be "so egregious as to render the trial fundamentally unfair." Id.
 
 III.
 
 51
 Accordingly, the decision of the district court denying petitioner's request for habeas relief is AFFIRMED.
 
 
 
 [1]
 The trial court reduced the charge to murder in violation of Ohio Rev.Code Ann. Sec. 2903.02 at the close of all proof
 
 
 [2]
 Subsequent to oral argument, petitioner filed a letter pursuant to Fed.R.App.P. 28(j) directing our attention to Hoover v. Garfield Heights Municipal Court, 802 F.2d 168 (6th Cir.1986). Petitioner asserts that in Hoover we "[made] it clear that in ascertaining the elements of a state offense, the state courts are not free to alter statutory language or to adopt a construction which is inconsistent with the plain language of a statute." Assuming arguendo that petitioner's interpretation of Hoover is correct, we believe that the Ohio Court of Appeals' determination that voluntariness is not an element should nonetheless be followed. There is no "plain language" in section 2901.21 to the effect that voluntariness is an element of, as opposed to a defense to, the crime of murder. Accordingly, we do not believe the Ohio Court of Appeals altered the statutory language in reaching its conclusion. Moreover, as noted supra, a panel of this court has also concluded that voluntariness is not an element of the crime of murder. See White v. Arn, 788 F.2d at 345
 
 
 [3]
 It might be the case that an individual could form the mental intention to do an act and yet be unable, for physical reasons, to translate that intent into a physical act. In the present case, however, the physical act did in fact occur. It is implicit in the jury's determination of guilt that the jury concluded that the physical act was the result of the formation in petitioner's mind of the intent to kill